UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
CARLETTA THOMPSON,                   : 03 Civ. 4182 (JSR)(JCF)
                                     :
                Plaintiff,           : REPORT AND
                                     : RECOMMENDATION
    - against -                      :
                                     :
CITY OF NEW YORK,                    :
                                     :
                Defendant.           :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

The plaintiff, Carletta Thompson, brings this employment discrimination action pro se, pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12112 et seq. She alleges that the defendant, the City of New York (the "City"), discriminated against her by failing to accommodate her disability and by creating a hostile work environment and retaliated against her for asserting her rights. On September 11, 2006, summary judgment was granted in favor of the defendant as to all of the plaintiff's claims except her claim of retaliation involving a denial of workers' compensation benefits. The City now renews its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the retaliation claim. For the reasons that follow, I recommend that the motion be granted.

Background

Ms. Thompson was hired by the New York City Department of Probation (the "DOP") as a probation officer on November 13, 1995.

1

She was assigned to the K.S.I.R. Unit[1] in Brooklyn. (Statement of Carletta Thompson dated June 9, 2003 ("6/9/03 Statement"), attached to Complaint, at 1).

On January 6, 1997, the plaintiff was transferred to the Nova Ancora Program in Manhattan. (6/9/03 Statement at 1). Around October 1997, she started to experience numbness, tingling, and pain in her wrists, but she did not see a doctor or notify anyone at DOP about it until February 1998. (Deposition of Carletta Thompson ("Thompson Dep."), attached as Exh. F to Declaration of Eric Eichenholtz dated Feb. 14, 2006 ("Eichenholtz 2/14/06 Decl."), at 39). On March 11, 1998, Ms. Thompson was diagnosed with carpal tunnel syndrome ("CTS") by Dr. Ling O. Cheng. (6/9/03 Statement at 1 & Exh. A). The CTS diagnosis was confirmed by Dr. William L. King on March 26, 1998. Dr. King felt that the plaintiff's symptoms were related to her job activities and recommended "an ergonomic evaluation of her work station." (6/9/03 Statement at 1 & Exh. D). Ms. Thompson met with the DOP Health & Safety Coordinator, who recommended that she be provided with an ergonomic chair and a wrist rest. (Memorandum of Dawn M. Pinnock dated March 13, 1998, attached as Exh. J to Eichenholtz 2/14/06 Decl.).

In April 1998, Ms. Thompson submitted a claim for workers' compensation benefits for the injury to her hands, wrist, and arms (the "1998 claim"). (6/9/03 Statement at 2; Employer's Report of

---

[1] The record does not indicate the full name of the K.S.I.R. Unit.

2

Injury/Illness ("C-2") dated April 27, 1998, attached as Exh. 17 to Affirmation of Carletta Thompson in Opposition to Defendant's Motion for Summary Judgment for Retaliation Claim dated Aug. 8, 2007 ("Pl. Opp. Aff.")). That claim was contested by the New York City Law Department, Workers' Compensation Division (the "Workers' Compensation Division"). (Declaration of Mindy Roller dated July 23, 2007 ("Roller Decl." ), attached as Exh. E to Declaration of Eric Eichenholtz dated July 25, 2007 ("Eichenholtz 7/25/07 Decl."), ¶ 6). On November 21, 2002, the New York State Workers' Compensation Board (the "WCB") found in favor of Ms. Thompson and directed that she be awarded compensation for 20% schedule loss of use to each hand. (Roller Decl., ¶ 8).

On June 21, 1998, Ms. Thompson requested a transfer to another work assignment to accommodate her CTS. (6/9/03 Statement at 2). She was transferred to the Investigation Unit at Manhattan Family Intake and Services ("MFIS") on September 28, 1998. (6/9/03 Statement at 2). That position required what the plaintiff characterizes as an "excessive" amount of writing and sitting, which aggravated her CTS. (6/9/03 Statement at 2). While at MFIS, Ms. Thompson had difficulty keeping up with her caseload and made four transfer requests. (Eichenholtz 2/14/06 Decl., Exhs. U and W). She also filed a complaint with the New York State Division of Human Rights (the "SDHR") on February 16, 1999. (6/9/03 Statement at 2). The SDHR subsequently determined that there was no probable

3

cause to believe that the City had discriminated against the plaintiff. (Determination and Order After Investigation, attached as Exh. E to Eichenholtz 2/14/06 Decl.).

In August 1999, Ms. Thompson started to experience severe back, neck, and shoulder pain, accompanied by daily headaches. (6/9/03 Statement at 3). She sought treatment from a chiropractor, Dr. Jay Handt, who diagnosed her with back and neck injuries (6/9/03 Statement at 3). The pain escalated in October 1999, and Ms. Thompson was absent from work from October 8 through October 22, 1999. (6/9/03 Statement at 3). Although she submitted notes from Dr. King and Dr. Handt, Branch Chief Philip Dobbs denied use of her sick leave benefits for this period and her pay was docked to reflect the missed time. (6/9/03 Statement at 3; Memorandum of Philip S. Dobbs dated Oct. 25, 1999, Time Sheets, Notes dated Oct. 20 and 25, 1999, and Pay Statements, all attached as Exh. J to 6/9/03 Statement).

On January 28, 2000, the plaintiff was transferred from MFIS to Linden House Aftercare Program ("Linden House") in Brooklyn. (6/9/03 Statement at 3). She worked there until the facility closed in January 2002. (Thompson Dep. at 223-24). Thereafter, she was transferred first to the Manhattan Alternative to Detention Program (Thompson Dep. at 224), and, later in 2002, to Kings Family Services in Brooklyn. (Thompson Dep. at 230).

On March 20, 2002, while at Manhattan Alternative to

4

Detention, the plaintiff submitted a second claim for workers' compensation benefits for the back and neck injuries that she was diagnosed with in 1999 (the "2002 claim"). (Employee's Claim for Compensation ("C-3") dated March 20, 2002, attached as Exh. H to Eichenholtz 7/25/07 Decl). Unlike the 1998 claim, which was initiated from within the DOP, Ms. Thompson filed this claim directly with the WCB. (Roller Decl., ¶ 9). The City denied payment for her chiropractor's bills, first because it claimed it did not have a record of the injury (Letter of Benefits Examiner dated Feb. 25, 2003, attached as Exh. R to 6/9/03 Statement), and later because it contested the grounds for her claim. (Letter of Carletta Thompson dated Feb. 20, 2004, attached as Exh. 15 to Affirmation in Opposition to Defendant's Motion for Summary Judgment dated Feb. 27, 2006). Ms. Thompson ultimately prevailed on the 2002 claim and, on April 25, 2007, was awarded compensation by the WCB for permanent injury to her back and neck. (Roller Decl., ¶ 12).

In November 2003, Ms. Thompson requested and received a medical leave of absence on the basis that her CTS rendered her unable to work. (Thompson Dep. at 235-37). In December 2003, the plaintiff decided to retire. She applied and was approved for ordinary disability retirement beginning March 12, 2005. (Thompson Dep. at 20-21).

The plaintiff subsequently brought this suit alleging that the City failed to make reasonable accommodation for her disability,

5

subjected her to harassment that amounted to a hostile work environment, and retaliated against her by denying her sick leave, transferring her to MFIS, and refusing to pay the chiropractor's bills connected to her 2002 workers' compensation claim. On August 10, 2006, I recommended that summary judgment be granted to the defendant on all claims except the workers' compensation retaliation claim. Thompson v. City of New York, No. 03 Civ. 4182, 2006 WL 2457694 (S.D.N.Y. Aug. 10, 2006). With respect to that claim, the defendant had relied almost exclusively on an absence-of-injury theory that was rejected by the Supreme Court in Burlington Northern & Santa Fe Railway Co. v. White, __ U.S. __, 126 S. Ct. 2405 (2006). I noted that the City should be permitted to renew its summary judgment motion on that claim in order to advance alternative arguments and that the plaintiff be permitted to respond. On September 11, 2006, the Court adopted my recommendation in full. (Order dated Sept. 11, 2006).

The City has now renewed its motion for summary judgment on the outstanding retaliation claim. It contends that Ms. Thompson has not made out a prima facie case of retaliation because she is unable to show any nexus between her engagement in protected activity and the adverse employment action. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Memo.") at 3). Even if the plaintiff has made out a prima facie case, the City argues, her claim must fail because the City's actions were not motivated by retaliatory animus. (Def. Memo. at 7).

6

Discussion

A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The opposing party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e). Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7

255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). Furthermore, pleadings of a nonmoving party that is proceeding pro se should be read "to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Nevertheless, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is speculative or not significantly probative. Id. at 249-50. "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forth some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank

8

of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

B. Retaliation

Ms. Thompson maintains that the City retaliated against her by failing to issue a C-2 after she missed work due to back and neck injuries, leading the Workers' Compensation Division to refuse to pay her chiropractor's bills. (Pl. Opp. Aff. at 7-9). The plaintiff also appears to challenge the Workers' Compensation Division's decision to litigate her 2002 claim insofar as it postponed payment to Dr. Handt. (6/9/03 Statement at 5; Pl. Opp. Aff. at 11).

The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Retaliation claims under the ADA are analyzed using the same framework applied in Title VII cases. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001). In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show "that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (quoting

9

Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).

Under the ADA, an adverse employment action can be established by showing that "a reasonable employee would have found the [] action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, __ U.S. at __, 126 S. Ct. at 2415 (internal quotation marks omitted). A materially adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment" Id. at 2412-13. However, it must be more than trivially harmful. See Kessler v. Westchester County Department of Social Services, 461 F.3d 199, 209 (2d Cir. 2006) (discussing Burlington Northern).

With regard to the causal nexus, a plaintiff must proffer evidence upon which a jury could find that a causal connection exists, i.e., that a retaliatory motive played a substantial part in the adverse employment action. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). A causal connection may be established indirectly by, for example, "showing that the protected activity was followed closely in time by the adverse action," Cifra v. General Electric Co., 252 F.3d 205, 217 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)), or directly, through evidence of retaliatory animus. DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir.

1987).

Once the plaintiff has established a prima facie case, the defendant may rebut the presumption of retaliation by articulating a legitimate, non-retaliatory reason for the action. See Cifra, 252 F.3d at 216; Richardson v. New York State Department of Correctional Services, 180 F.3d 426, 443 (2d Cir. 1999). The burden then shifts back to the plaintiff to "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext." Id.

Ms. Thompson alleges that Mr. Dobbs failed to take steps required to process her second workers' compensation claim after she notified him that she had developed back and neck injuries in August 1999. Specifically, she argues that he did not complete the requisite paperwork, including forwarding a C-2 to the Workers' Compensation Division.[2] As a result, no claim was initiated until 2002, when the plaintiff engaged a law firm to file a C-2 directly with the WCB.

Ms. Thompson is not able to make out a prima facie case of retaliation because she cannot show a causal nexus between her protected activity and Mr. Dobbs' failure to initiate paperwork for a workers' compensation claim. First of all, even assuming that Mr. Dobbs had an obligation to issue a C-2 (Pl. Opp. Aff. at 7),

---

[2] By way of comparison, Assistant Commissioner Eden Weiss had done exactly that when the plaintiff first notified her superiors about her CTS in 1998. (Pl. Opp. Aff. at 7).

11

his failure to do so did not follow closely enough in time after the plaintiff filed her SDHR complaint in February 1999 to constitute indirect evidence of retaliation.[3] See Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) (to establish retaliation, "temporal proximity" between employer's knowledge of protected activity and adverse action must be "very close"; 20 month gap too great to establish causal nexus); Nonnenmann v. City of New York, No. 02 Civ. 10131, 2004 WL 1119648, at *23 (S.D.N.Y. May 20, 2004) (collecting cases establishing that gaps of three months or more are too great to provide indirect evidence of retaliatory animus).

Ms. Thompson is further unable to show a causal nexus because she has not established that Mr. Dobbs had a duty to complete a C-2 in the absence of some indication from Ms. Thompson that her injury was work-related. Neither the doctor's note she submitted to Mr.

---

[3] Reading the evidence in the light most favorable to the plaintiff, it is also possible to treat October 25, 1999 as the date after which Mr. Dobbs should have issued a C-2, assuming that he had an obligation to do so. That is the day that Ms. Thompson submitted doctors' notes specifying her injuries to Mr. Dobbs after having been absent from work for two weeks. (6/9/03 Statement, Exh. J). If that date were used, the adverse action would not be too remote in time to support an inference of causation because she made a request for transfer with reasonable accommodation on the same day. (Eichenholtz 2/14/06 Decl., Exh. W; Thompson Dep., Excerpts attached as Exh. F to Eichenholtz 2/14/06 Decl., at 172). Seeking a reasonable accommodation constitutes protected activity under the ADA. See Weixel v. Board of Education of New York, 287 F.3d 138, 149 (2d Cir. 2002). However, because the plaintiff is unable to establish that Mr. Dobbs had a duty to issue a C-2, as described below, the inference of causation is immaterial.

Dobbs on August 30, 1999 (Pl. Opp. Aff., Exh. 15), nor the two notes she submitted on October 25, 1999 (6/9/03 Statement, Exh. J) indicates that her back and neck injuries were attributable to work activities. Nor did Ms. Thompson fill out an Employee's Notice of Injury form. (Roller Decl., ¶ 6, 9). Indeed, Ms. Thompson claims only that she notified Mr. Dobbs that she was receiving care for her injuries. (Pl. Opp. Aff. at 7, 9). Thus, no one at MFIS would have known to issue a C-2 to the Workers' Compensation Division and the failure to do so cannot be considered retaliatory.

To the extent that Ms. Thompson claims the Workers' Compensation Division's refusal to pay Dr. Handt's bills is retaliatory, she has likewise failed to show a causal nexus with protected activity. By the time she submitted the bills to the Workers' Compensation Division as part of her 2002 claim, she had been transferred to another work assignment and had not made a request for reasonable accommodation since January 28, 2002 (Eichenholtz 2/14/06 Decl., Exh. AA). The inference of causation is tenuous when even two months have elapsed between the protected activity and allegedly adverse action. Cf. Lewis v. Snow, No. 01 Civ. 7785, 2003 WL 22077457 (S.D.N.Y. Sep. 8, 2003) (no causal nexus where three months had elapsed between protected activity and adverse action). In any event, the plaintiff's claim must be dismissed because the defendant has articulated legitimate, non-retaliatory explanations for the Workers' Compensation Division's decision to contest the 2002 claim. Initially, the Workers'

13

Compensation Division challenged the claim because it was not sufficiently supported and, specifically, was not accompanied by a C-2 form. (Roller Decl., ¶ 10; Notice that Right to Compensation is Controverted ("C-7") dated July 13, 2003, attached as Exh. K to Eichenholtz 7/25/07 Decl.). Later, it contested the claim on the legal ground that the plaintiff's injury did not result from a work-related accident. (Roller Decl., ¶¶ 11-12; In re Thompson, Case No. 0021 6554, 2005 WL 1996382 (Aug. 11, 2005)). Though ultimately unsuccessful, this position was plausible, and the plaintiff has not pointed to any evidence that suggests that the City's explanations for its actions are pretextual. Therefore, the retaliation claim must be dismissed.

Conclusion

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Jed S. Rakoff, Room 1340, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objection will preclude appellate review.

14

Respectfully submitted,

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       November 21, 2007

Copies mailed this date:

Carletta Thompson
163-17 130th Avenue, Apt. 3F
Jamaica, New York 11434

Eric Eichenholtz
Assistant Corporation Counsel
100 Church Street, Room 2-300
New York, New York 10007